IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

**BRYNARD HODGE,**
  Plaintiff,

v.              No:  1:05cv86/MP/MD

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**
  Defendant.
_____

## REPORT AND RECOMMENDATION

  This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Hodge's application for Supplemental Security Income (SSI) benefits under Title XVI of the Act.

  Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

## PROCEDURAL HISTORY

  On July 22, 2002, plaintiff filed an application for SSI benefits which was denied initially and on reconsideration.  Plaintiff requested a hearing before an

Administrative Law Judge (ALJ) and a hearing was held on May 11, 2004 at which plaintiff was represented by counsel and testified. A vocational expert also testified. The ALJ rendered an unfavorable decision on August 6, 2004 (Tr. 12-20) and the Appeals Council declined review (Tr. 3-5), making the decision of the ALJ the final decision of the Commissioner, and therefore subject to review in this court. *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998). This appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that plaintiff had degenerative disc disease of the lumbar spine, spinal stenosis, status post lumbar fusion surgery of L4-5 and L5-1 and chronic pain syndrome which were severe but which did not meet or medically equale one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4; that plaintiff's allegations regarding his limitations were not totally credible; that he was unable to perform any of his past relevant work; that he was a younger individual with a limited education but without transferrable skills; that he had the residual functional capacity to perform a significant range of sedentary work with a sit/stand alternate; that there are a significant number of jobs in the national economy that he could perform based on his restrictions and limitations, such as dispatcher of motor vehicles, telephone operator and surveillance system monitor; and that he was not disabled as defined in the Act.

## STANDARD OF REVIEW

The ALJ's decision will be reversed only if it is not supported by substantial evidence. *Falge, supra*. The court must determine whether the Commissioner's

decision is supported by substantial evidence in the record and whether it is premised upon correct legal principles. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983). In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)(citations omitted). Findings of fact by the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps. A finding of disability or no disability at any step renders further evaluation unnecessary. The steps are:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3.  Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4.  Does the individual have any impairments which prevent past relevant work?

5.  Do the individual's impairments prevent any other work?

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  *Chester v. Bowen*, supra, 792 F.2d at 131; *MacGregor v. Bowen*, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, claimant must prove that he cannot perform the work suggested by the Commissioner.  *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## PLAINTIFF'S MEDICAL HISTORY

Plaintiff alleges that he became disabled on June 1, 1995 due to back pain. Although the medical record in this administrative file begins in June 2001, plaintiff testified and the records confirm generally that plaintiff had four surgeries on his low back between 1984 and 1997 (Tr. 141).  Plaintiff, an automobile mechanic, has not been able to work since that time.  Plaintiff filed prior applications for disability that were denied in 1995, 1998 and 2000 (Tr. 184).

The earliest medical records in the administrative file are two visits to the emergency room, the first on June 17, 2001 and the second on July 7, 2001.  On the first visit, plaintiff complained of shoulder pain due to his work "hanging heavy doors" (Tr. 131-132).  On the second visit he had a minor eye injury because he was working on a metal roof (Tr. 129-130).

On August 14, 2002, plaintiff returned to Joseph C. Cauthen, M.D., the neurosurgeon who had performed all of his prior back surgeries (Tr. 199).  He

presented with complaints of pain in his low back, left buttock, and leg to the knee. There was some numbness in the left leg to the toes intermittently with weakness in the left leg.  He had difficulty sitting and standing for any period of time.  He reported that his symptoms began in 1997, or about one year after his last surgery. Noteworthy on his physical examination was guarded movement in flexion, positive left leg raising at 90° with pain and absent left reflexes at the knee.  Dr. Cauthen diagnosed lumbar degenerative disc disease at L4-5 and L5-S1 with lumbar spinal stenosis, status post lumbar interbody fusion, diabetes and bursitis in the left shoulder.  He ordered a lumbar myelogram and CT scan to rule out lumbar nerve compression and scheduled a return after these studies (Tr. 140-143).

An x-ray performed on August 29, 2002 showed the presence of threaded fusion cages at L4-5 and L5-S1 from the 1997 surgery.  There is no indication of loosening and there were mild degenerative disc changes with anterior osteophytes at L3-4 with Schmorl's Node at L1-2.  There were no wedge deformities and no spondylolisthesis (Tr. 137).  A myelogram showed a block of caudal flow of contrast at the L4-5 and L5-S1 levels.  There was a suggestion of diffused arachnoid adhesion above that level (Tr. 136).  On CT scan there was a diffused disc bulge at L3-4 resulting in a moderate to severe central spinal stenosis (Tr. 136, 138).  Plaintiff returned to Dr. Cauthen on September 6, 2002 to go over the results of the imaging studies.  Dr. Cauthen recommended additional surgery but the plaintiff declined. Plaintiff indicated that he was planning to apply for social security benefits and Dr. Cauthen stated that "I agreed that he might meet criteria." (Tr. 135)

The only other record from Dr. Cauthen was a questionnaire he filled out for plaintiff's attorney on January 4, 2003.  He noted loss of range of motion in the low back because of the earlier fusions, moderate muscle spasms but no significant deficit. He noted that plaintiff walked with a limp.  Dr. Cauthen indicated that plaintiff

could squat, walk on his toes and heels, and did not need an assistive device for ambulation (Tr. 155).

On July 7, 2003, plaintiff came under the care of Christopher Leber, M.D., a rehabilitation specialist, on referral by Dr. Cauthen. On examination of plaintiff's spine, Dr. Leber found full range of motion in all directions in the upper extremities with decreased motion of the left shoulder. In lumbar spine, flexion, extension or rotation increased pain in all directions and there was some spasm in the lumbar paraspinal muscles bilaterally. Straight leg raising was negative on the right, positive on the left. There were no motor strength deficits in the arms or legs but decreased sensation in the left thigh. Dr. Leber's diagnosis was failed low back syndrome, chronic pain syndrome, four spinal surgeries with caged fusion in 1996, insomnia, diabetes, and impaired gait and mobility. He started plaintiff on Percoset and told him to return in four weeks (Tr. 172-174). Plaintiff returned on August 4, 2003. He indicated that the Percoset was helping to keep him functional without side effects (Tr. 171). He returned to Dr. Leber on September 29, 2003 and reported good management of his pain with Percoset (Tr. 170). Plaintiff saw Dr. Leber again on November 24, 2003 and indicated that his pain was well managed with his medication. He reported no side effects or unusual symptoms from the drug and remained more functional with it. He also indicated he was doing some work physically but was unable to hold down a full-time job due to ongoing pain. Dr. Leber renewed the Percoset prescription and told plaintiff to return in two months (Tr. 169). He returned on January 19, 2004, essentially unchanged, but wondered whether burning pain in his back could be caused by diabetes. He again denied side effects from the Percoset. Dr. Leber felt that he may have a component of diabetic polyneuropathy as a cause for some of the burning pain but he had also had multiple operations on the lumbar spine which could contribute to them as well. Plaintiff's medication was refilled and he was told to return in two months (Tr. 166-167).

Plaintiff's last visit to Dr. Leber was on March 15, 2004. His condition was essentially unchanged although he now had some pain in his right elbow (Tr. 164-165).

Plaintiff was referred to Robert Greenberg, M.D., a pulmonologist, for an independent consultation. Dr. Greenberg did a full medical examination, and noted lumbar pain but without spasm. Range of motion in the lumbar spine was decreased and there was decreased strength in the left leg with absent reflexes. Straight leg raising was positive on the right at 30° and the left at 15°. Plaintiff's gait and station were normal and he did not require any assisting device for ambulation. His grip strength and fine manipulation were normal and repetitive muscle testing did not produce fatigue. Dr. Greenberg's impression was severe low back pain, probably secondary to lumbar disc disease. In his opinion, plaintiff would be unable to perform any work-related activities that required heavy lifting or bending (Tr. 144-145). The only other record from Dr. Greenberg was a residual functional capacity evaluation he filled out on May 6, 2004. There he opined that plaintiff could sit for 30 minutes to one hour at a time for a total of three to four hours per day, could stand for 30 minutes to one hour at a time for a total of one to two hours per day and with a sit-stand option could sit and stand for a total of four to five hours per day. Dr. Greenberg also opined that plaintiff could lift no more than five pounds at any time (Tr. 178-181).

## DISCUSSION

The plaintiff argues that the ALJ erred in failing to allow plaintiff's attorney to present hypothetical questions to the testifying vocational expert, and in finding that plaintiff is not disabled, and that plaintiff was disabled from his onset date as a matter of law. The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained. The issue thus presented

is whether the ALJ's decision that the plaintiff was not disabled, in light of his physical condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

### 1.     Hypothetical questions.

Plaintiff first contends that the ALJ erroneously prevented him from posing hypothetical questions to the vocational expert. At the hearing the following occurred:

> BY ATTORNEY:
> Q      And the question, how long can the person work at a job that requires him to sit while working.
>
> ALJ:   Ten minute break each hour would be 40 minutes in an eight-hour period of time.
>
> ATTY:  Okay.
>
> ALJ:   There's, I believe, what is it -- an hour break?
>
> BY ATTORNEY:
> Q      Would, okay. Would any job accommodate beyond the regular hours of work that somebody has to do like during the day there is perhaps a lunch and ten minutes in the morning and ten minutes in the afternoon that the person has to get off task and sit, stand. They have to get up fast every hour to perhaps stretch or do whatever it requires him to do for relief. Would they still be accommodated –
>
> ALJ:   Would that be besides the break, regular break or start of the break or –
>
> ATTY:  No, besides the regular break.
>
> ALJ:   Yeah. If a person cannot work, like I stated before, Counsel, in the prior hearing, if a person cannot work a regular eight-hour day with the regular break periods of about an hour for lunch and 15 minutes in the morning and 15 minutes in the afternoon they won't be, if a person cannot do a full hour sustained regular job, then that person would be disabled.

*Case No: 1:05cv86/MP/MD*

ATTY:  Your Honor, I don't want to continue if you don't want me to, but that's why we have an expert.  We're supposed to pose the question s __

ALJ:   Well, I'm not going to allow the questions that go against a ruling, Counsel, which indicate that a person needs to work eight hours a day, five days a week for a continuous and sustained basis in a competitive work setting.

ATTY:  Your Honor,

ALJ:   If a person cannot do that, now you are asking questions –

ATTY:  Yes, Your Honor.  Two evaluations from the Agency in which the agent, the evaluator that the Agency sent him to clearly indicated that he can only lift less than ten pounds.  He's very clear there.

ALJ: That's, you know, this -- we're talking about Dr. Greenberg.  But I don't know, I don't care who did it, Counselor.  But it is contrary to what his report states, you know, and I don't have to give it that much weight and that's not what he says here.  I don't see anything about five minutes or –

ATTY:  Your Honor, the second, the second, Exhibit A2, it states that can take up to five minutes –

ALJ:   If a person can only work a total of three to four hours per day, five days a week, Counsel, and a person can only stand for a total of one to two hours a day in a five days a week, (sic) a person would not be able to work a full eight-hour work day so a person would be disabled.  And I take administrative notice of that.  If a person can only work four, three to four hours per day and one to two hours per day, I mean sitting and one to two hours per day standing –

ATTY:  Your Honor, I don't know if you looked at it, but didn't want to give it weight, that's one thing.  To not look at it at all is –

ALJ:   You know, Counselor, you know, like I say again, Dr., Dr. Greenberg says this person can work four to five hours per day, four to five hours per day standing at will.  Now it's, the weight that he can, that would be three to four hours per day sitting.

ATTY:  And that's total.  That's everything.

ALJ:   A total of three hours, I mean eight hours.

ATTY:  Your Honor, I've got Dr. Harry Prestal (phonetic) who did 4F also put him at less than sedentary.

ALJ:   That's –

ATTY:  Wouldn't that reflect in the hypothetical?

ALJ:   What my point is, Counselor, that if a person cannot work more than eight hours in a regular sustained basis they could not be able to perform substantial gainful activity.

ATTY:  I agree with you, Your Honor.

ALJ:   That's my point.

ATTY:  I agree with you, Your Honor.  But if the hypothetical that doesn't totally reflect the claimant's impairments, decisions based on that will not be based on substantial competent evidence.  And if the VE responds to that it will also be not, if won't be supported by the evidence because they have to totally reflect the claimant's impairment and his condition.

ALJ:   If that is the question that they cannot work more than eight hours a day, I'm not going to allow the question because I have to take administrative notice that the person is disabled and that's my ruling, Counsel.

ATTY: Your Honor, I'm not, not disputing your decision, Your Honor.  I'm just saying that the hypothetical that was given didn't quite reflect the claimant's, the totality of his impairments were not reflected in the hypothetical the VE based his answer on.  And I'm saying that there are Eleventh Circuit cases that would address that.

>   ALJ:   That's fine.
>
>   ATTY:  I'm done, Your Honor.  I don't have anything else.
>
>   ALJ:   Okay.  If there's nothing else, then this concludes the hearing.
>
>   ATTY:  Thank you, Your Honor.

(Tr. 241-244).

**Plaintiff's claim here is similar to an issue raised by this same counsel recently and discussed in a report and recommendation by the undersigned. *See Culbreath v. Barnhart*, 1:05cv14/MP/MD (N.D. Fla. Jan. 3, 2006) which is presently before the District Judge for consideration.  Here plaintiff does not argue a constitutional claim.  Rather, he contends that he has the right to address the vocational expert fully with hypotheticals that contain the full extent of the plaintiff's limitations.  Plaintiff is legally correct, but only up to the point that the ALJ accepts those limitations.  The foregoing colloquy is somewhat confusing, but it is obvious that counsel wanted to ask the vocational expert if the plaintiff was employable if his pain was as severe as plaintiff contended, and if he could lift only five pounds, as opined by Dr. Greenberg.  The ALJ did not accept the degree of pain that plaintiff's contends, however, nor did he accept Dr. Greenberg's opinion that plaintiff could lift only five pounds.  Thus, while a hypothetical question must comprehensively describe the plaintiff's condition, and vocational expert testimony that does not accurately address that condition cannot be considered substantial record evidence, *Pendley v. Heckler,* 767 F.2d 1561, 1563 (11th Cir. 1985), here the hypotheticals put to the vocational expert by the ALJ fully met the limitations the ALJ ultimately adopted.  What counsel wanted to do was have the vocational expert testify that if plaintiff was as limited as Dr. Greenberg opined,**

*Case No: 1:05cv86/MP/MD*

and if his pain was so severe that he had to take a break every hour, he was not employable.  The ALJ agreed that if plaintiff had these limitations he would be unemployable, so there was no point in asking the questions.  As in *Culbreath, supra*, a party is not entitled to unlimited cross examination in an administrative proceeding.  *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).  The ALJ did not err in limiting cross examination.

    2.    Disability.

Plaintiff next contends that the ALJ erred in not finding him disabled.  His argument is founded on four pieces of evidence: (1) Dr. Cauthen's records, (2) Dr. Leber's records, (3) Dr. Greenberg's records and (4) plaintiff's subjective complaints of pain.

    a.    Dr. Cauthen.

Plaintiff first notes an entry in Dr. Cauthen's records that plaintiff intended to apply for Social Security benefits, and the doctor's statement that "I agreed that he might met criteria."  (Tr. 135).  Nowhere, however, did Dr. Cauthen describe physical limitations that would keep plaintiff from working at *any* job.  And even if Dr. Cauthen's supposition that plaintiff *might* meet the criteria were stated more positively, his opinion still would not be controlling.  The opinion by a treating physician that a patient is "unable to work" or is "disabled" is not dispositive for purposes of Social Security claims.[1]

---

[1] The Commissioner's regulations and the interpretations of those regulations clearly provide that an ALJ should give weight to a physician's opinions concerning the nature and severity of a claimant's impairments, but that the ultimate question of whether there is disability or inability to work is reserved to the Commissioner.  For instance, Title 20 C.F.R. § 404.1527(e)(1) specifically states that a finding of disability or inability to work by a medical source does not mean that the Commissioner will automatically reach the same conclusion.  *See also* Title 20 C.F.R. § 416.927(e).  Furthermore, the Commissioner "will not give any special significance to the source" of an opinion on issues reserved for the Commissioner.  Title 20 C.F.R. § 404.1527(e)(3) and § 416.927(e)(3);  *see also* Social Security Ruling 96-5p (whether an individual is disabled is a question reserved to the Commissioner; treating source opinions on such questions are "never entitled to controlling weight or special significance").  Although such opinions on disability are not entitled to controlling weight, they must not be ignored, and the Commissioner must examine the entire record to determine whether such opinions are supported by the record.  SSR 96-5p.  In *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997) the court reversed the ALJ's finding of no disability, in part because the ALJ relied on a treating physician's

b.  Dr. Leber.

Plaintiff also notes an entry in Dr. Leber's notes that says "Mr. Hodge is a gentleman with permanent impairment as a result of his ongoing problems with the lumbar spine region." (Tr. 174). Nevertheless, a permanent impairment is not necessarily a total impairment, or a disability as defined in the Act. And if Dr. Leber had made such a statement, any such opinion would not be binding on the ALJ, as discussed above and in footnote 1.

c.  Dr. Greenberg.

In his RFC form Dr. Greenberg opined that plaintiff could lift no more than five pounds. As the ALJ noted, that is totally inconsistent with his original opinion that plaintiff could not do work that involved *heavy* lifting. Dr. Greenberg saw plaintiff only once, and it was reasonable for the ALJ to reject an opinion that had changed to that degree without an intervening examination or worsening of plaintiff's condition known to Dr. Greenberg.

d.  Plaintiff's subjective complaints of pain.

Finally, plaintiff contends that the ALJ improperly discounted his subjective complaints of pain. As this court is well aware, pain is treated by the Regulations as a symptom of disability. Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms,

---

report that the claimant could no longer work as a longshoreman when this report was ambiguous as to whether the claimant could do *any* work, and the physician subsequently wrote a letter saying the claimant was completely disabled.

To require the Commissioner to accept as controlling a statement that a patient is or is not disabled would require the Commissioner to credit the physician not only with knowledge of the patient's physical condition, but also with an understanding of the nuances of how the regulations analyze physical limitations with respect to job experience, age, education, transferability of skills, the definitions of the various levels of exertion relevant to types of work, and similar matters. Moreover, a physician's opinion on whether a person is able to work may be colored by such things as the physician's knowledge of local hiring practices, whether there are specific job vacancies, a person's reluctance to do a particular kind of work, and similar matters. These things are not properly considered by the Commissioner in determining disability. Title 20 C.F.R. §§ 404.1566, 416.966. For all these reasons, a physician's opinion that his or her patient cannot work or is disabled is not a conclusive medical opinion for the purpose of Social Security benefits determinations and by itself is not entitled to special significance.

including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms." *Accord* 20 C.F.R. § 416.929. In *Hand v. Heckler*, 761 F.2d 1545, 1549 (11th Cir. 1986), the Eleventh Circuit adopted the following additional pain standard:

> There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

The Eleventh Circuit continues to follow the *Hand* test. *Wilson v. Barnhart*, 284 F.3d 1219 (11th Cir. 2002); *Kelley v. Apfel,* 173 F.3d 814 (11th Cir. 1999); *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1216 (11th Cir. 1991); *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Martin v. Railroad Retirement Bd.,* 935 F.2d 230, 233 (11th Cir. 1991).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard." *Wilson, supra*, 284 F.3d at 1226. Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

But "[w]hile both the Regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." *Elam*, 921 F.2d at 1216. The court has held that "[p]ain alone can be disabling, even when its existence is unsupported by objective evidence." *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (citing *Walker v. Bowen*, 826 F.2d 996,

1003 (11th Cir. 1987)). However, the absence of evidence to support symptoms of the severity claimed is a factor that can be considered. *Id.*; *Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, "[i]f the Commissioner refuses to credit [subjective testimony of the Plaintiff concerning pain] he must do so explicitly and give reasons for that decision. . . . Where he fails to do so we hold as a matter of law that he has accepted that testimony as true." *MacGregor v. Bowen*, 786 F.2d at 1054; *Holt v. Sullivan*, 921 F.2d at 1223. The reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991).

The ALJ did not credit plaintiff's claims concerning his subjective complaints of pain. He noted that at the hearing plaintiff complained of grogginess and other side effects, but consistently denied any such side effects to his treating physician (Tr. 13, 16). He noted that plaintiff's pain was well managed by his medication, and that he engaged in such daily activities as doing housework, doing lawn work and some mechanical work, going to car races, and fishing. While these types of activities would not support a finding that plaintiff could return to doing automotive work full time, they are suggestive that plaintiff could do *some* type of work. Given the limitations found by the ALJ, all of which were supported by substantial record evidence, the vocational expert testified that plaintiff could work as a motor vehicle dispatcher, a telephone operator, or a surveillance system monitor.

The ALJ's decision was supported by substantial record evidence, and plaintiff is not entitled to reversal. Accordingly, it is respectfully

**RECOMMENDED that the decision of the Commissioner be AFFIRMED, that this action be DISMISSED and that the clerk be directed to close the file.**

**At Pensacola, Florida this 24TH day of March, 2006.**

/s/ *Miles Davis*
       **MILES DAVIS**
       **UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.** <u>**Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.**</u> **A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. See 28 U.S.C. § 636;** *United States v. Roberts,* **858 F.2d 698, 701 (11th Cir. 1988).**